MOORE, deceased: Estate of, In re.

Probate Court, Franklin County.

No. 169913. Decided May 16, 1958.

Charles V. Schwenker, Columbus, for administratrix.

William Saxbe, Atty. Genl., Howard F. Wilson, Asst. Atty. Genl., Columbus, for Bureau of Support.

**OPINION**

By WALCUTT, J.

Mary Howell Moore died intestate in the City of Columbus, Franklin County, Ohio, on the 6th day of February, 1956, leaving as her next of kin and heirs at law three daughters, all adults. Nancy L. Howell, one of the daughters, was appointed administratrix of her estate by this Court on March 14th, 1956, and qualified as such.

Thereafter the estate of the decedent, Mary Howell Moore, was duly administered, and the first, final and distributive account of the administratrix was filed on September 28, 1956, and was thereafter approved and the estate was closed.

On October 19th, 1956, exceptions to the final account were filed by the Attorney General of Ohio on behalf of the Bureau of Support, Department of Mental Hygiene and Correction, of the State of Ohio, alleging that it is a creditor of Mary Howell Moore, deceased, and that the account is not a true and correct account for the reason that:

The administratrix did not ascertain from the Bureau of Support whether the deceased, Mary Howell Moore, was supported while a patient at the Columbus State Hospital as is required by §5121.10 R. C., and pursuant to any such determination failed to pay a debt for which his decedent was personally liable to the State of Ohio, which payment he is compelled to make according to law.

Exceptor further states that the sum due for support of said decedent is One Thousand Two Hundred Sixty Eight Dollars and twenty-seven cents ($1268.27), and that it did not have notice of decedent's death.

It was stipulated by counsel for the parties that Mary Howell Moore was committed to the Columbus State Hospital on April 10th, 1934, by the Probate Court of Franklin County, and that the hospital file shows that the charges for which the decedent was liable amounted to $1,268.27.

The schedule of debts filed in the matter on July 24th, 1956, does

not show the claim of the State of Ohio. The evidence does not show, nor is it contended, that the State of Ohio presented its claim in accordance with §2117.06 R. C.

Counsel for the administratrix contends, in essence, that the Bureau of Support is barred by the limitations imposed upon the presentation of claims to an administratrix, that the State did not exercise due diligence in the presentation of its claim, even though it had knowledge of the death of the decedent, and that the State should resort to the fund of the Industrial Commission of Ohio for payment of hospitalization under an order of that Commission theretofore issued.

The evidence shows that the decedent was injured on August 20th, 1945, when, as an employee of the Omar Bakery, she suffered a compensable injury at her work; that thereafter, to the time of her death, she was incapacitated and adjudged permanently disabled, and that, by order of the Industrial Commission of Ohio, on December 11th, 1950, the Commission found and determined that the decedent's mental condition had been caused by her industrial injury.

The evidence further indicates, and it was not disputed, that the decedent's condition was such that she required nurses to watch over her when she was not an inmate of the State Hospital, and that the Industrial Commission authorized and paid for such nursing care out of the Workmen's Compensation Fund.

It is likewise conceded that the decedent had been under guardianship for a number of years, and was under such guardianship at the time of her death.

The first question for consideration is whether or not the limitations of the statute apply as against the State of Ohio or one of its agencies, such as the Bureau of Support. The general principle is that the sovereign is not bound by the Statute of Limitations unless it manifests a clear intention so to be bound.

Since the Bureau of Support is a governmental agency within the Department of Mental Hygiene and Correction, it is in effect the state itself, and it cannot be barred by a Statute of Limitations.

25 O. Jur., Sec. 285, page 630, says:

This general principle, as to the immunity of a sovereign from laches, and the Statutes of Limitation, is applied to the state governments. So, the Statutes of Limitation do not run against the State of Ohio, unless the intention that they shall so run is obvious. This rule is sometimes of odious application, but it is adopted as incidental to sovereignty, and as necessary to preserve against negligence or cupidity those rights which the state has acquired or retained. The rule is applicable in actions where the state, though not a party to the record, is the real party in interest.

That same work quotes from the decision of Minshall, J., in **Heddleston v. Hendricks, 52 Oh St 460**:

The general rule is that the Statute of Limitations does not apply as a bar to the rights of the public, unless expressly named in the statute, for the reason that the same active vigilance cannot be expected of it as is known to characterize that of a private person, who is always jealous of his rights, and prompt to repel any invasion of them.

In **State of Ohio versus Security Central National Bank, Admr., 100 Oh Ap 425**, the second syllabus states bluntly:

The State of Ohio is not bound by the Statute of Limitations.

To like effect **Wasteney v Schott, Treas., 58 Oh St 410**:

The rule that statutes of limitation do not run against the state unless it is expressly so provided is applicable in actions where the state, though not a party to the record, is the real party in interest.

There are numerous holdings to the same effect, to which we shall not further refer. It is our opinion that the Statute of Limitations as to the presentation of claims does not apply to claims of the state for support of persons in the State Hospital, as there is no indication in the statute that it is intended to permit a private citizen to invoke the bar.

True, §5121.10 R. C., says:

Such claims shall be allowed and paid as other claims against the estate.

However, when this is read in connection with the other provisions of the statute, to which reference will be made later, it is clear that this was not intended to waive the rule as to any statute of limitations.

Coming now to the matter of whether or not the Administratrix can be excused for failure to include the claim of the state in her list of liabilities against the estate, reference must be had to §5121.10 R. C., which provides, in part:

Upon the death of a person who is an inmate or has been an inmate, of any benevolent institution under the jurisdiction of the department of mental hygiene and correction and who is possessed of property, the executor or administrator shall ascertain from the department whether the deceased person was supported while an inmate, and if not, the department may present a claim for support, or for the balance due in case less than the rate prescribed by §5121.03 R. C., has been paid Such claim shall be allowed and paid as other claims against the estate.

The language of the section just quoted is clear, explicit, and, we believe, mandatory. The legislature clearly intended the claim of the State of Ohio, in this case to be a preferred claim upon the assets of the decedent, and there is no necessity of presentation of the claim under §2117.06 R. C.

The reason for this is apparent. The executor or administrator of an estate has only his own matter to look after, whereas governmental authorities have claims without number of this character and it would be impossible and unreasonable to expect that the State Department or the office of the Attorney General could or should be able to keep track of all the details as to every claim. The General Assembly apparently intended to place at least a portion of the responsibility for taking care of these claims upon the shoulders of the fiduciary of the estate.

The administratrix knew of the confinement of the decedent in a state hospital, and she is charged with a knowledge of the law requiring payment for support.

The mere fact that she had been on bad terms with the guardian of her mother is not sufficient to excuse her from the duty imposed by statute upon her in her official capacity. And the statement of the

guardian, in turning over the assets and the list of the liabilities of his ward, that these were all the assets and unpaid bills, does not operate to discharge the obligation of ascertaining whether there were claims for support in a state institution.

This court has been especially sensitive to this situation, and when it formulated its rules on November 1st, 1957, this rule was included for the sole purpose of reminding fiduciaries and counsel of their liability under the law of Ohio where their decedent was or had been an inmate of a state institution:

Rule 5. CLAIMS OF GOVERNMENTS AND GOVERNMENTAL SUBDIVISIONS: Upon the filing of the schedule of debts, executors and administrators shall certify that they know of no indebtedness to the government of the United States, or of the State of Ohio, or of any political subdivisions thereof, as to any claim, presentation of which is not required by statute.

Of course, this rule was not in effect at the time of the closing of this estate, and it is set out here merely to show that the Court has been somewhat anxious about the failure of fiduciaries to investigate as to such claims.

See opinion of Griffith, J. (Court of Appeals, Trumbull County), in case No. 1380, State v. Knowlton.

It will further be noted that the administratrix in this case did not file her final account under the provisions of §2109.36 R. C., which provides:

An application for an order of distribution of the assets of an estate or trust held by a fiduciary may be set for hearing before the probate court at such time as the court shall designate. The fiduciary may serve notice of the hearing upon such application, or cause such notice to be served, upon any person who may be affected by an order disposing thereof; or the court, upon motion of any interested person for good cause shown or at its own instance, may order such notice to be served upon any such person. Such notice shall set forth the time and place of the hearing and shall be accompanied by a statement of the proposed distribution. At the hearing upon the application the court shall inquire into, consider, and determine all matters relative thereto, and make such order as the court deems proper. If the court makes an order of distribution, the fiduciary shall comply therewith and shall account to the court for his distribution, verified by vouchers or proof. An order of distribution shall have the effect of a judgment. Such order may be reviewed upon appeal and may be vacated as provided in §2101.35 R. C.

As to the contention of the administratrix that the state should resort to the Industrial Commission fund for the payment of the expenses of hospitalization of the decedent, while it is conceded, of course, that she was injured and that she did receive an award, we can see no obligation resting upon the Bureau of Support to call upon the Industrial Commission to meet this claim. It would be much like a debtor saying to his creditor that a third person owed him money, and the creditor should resort to that third person for the payment of the bill. If any duty lay upon anyone to collect the money for this purpose, it was the

duty of the guardian, and, the guardian having not done this, the administratrix should have proceeded to collect this claim as an asset of the estate.

We believe the exceptions to be well taken.

An order may be drafted accordingly.